Good morning, Your Honors. May it please the Court, on behalf of Appellant Russ Miliband & Smith, Ed Hayes, a member of the firm. Your Honor, ten minutes is short, and I know you guys are very thorough and have reviewed all the briefs. I'm going to try to hit the points that I think are really critical here. The standard of review, I think, is very important, and we talked about it a lot. And the reason I want to go over it now at oral argument is we believe that the district court applied the wrong standard of review in this case. The district court said all of the findings, whether our firm's security retainer was a security retainer, whether it was adequately disclosed, or whether we had an equitable lien on the funds, were all findings of fact. Everything the district court said was a finding of fact, and I don't believe that's the case on this appeal. Well, there was no disputed issue. I mean, we've got pieces of paper. They are what they are, right? Exactly. Those are the facts, and the rule of the law was established in Dixie Peck 1. You're just trying to get out from under clear error review. Absolutely, Your Honor. De novo review, I believe, is appropriate in this case, and the law calls for that. Dixie Peck 1 also taught us that there's three types of retainers that an attorney can get on funds under California law, classic retainer, advanced retainer, security retainer. Classic retainer clearly could not apply here. It was not a situation where the firm was being paid to be available should services be required. No, we don't have. Where's the retainer? The money? No, the agreement. The agreement itself, Your Honor, was the firm's application to be employed, which was signed by the dead person. That's not an agreement with the client. Yes, it is, Your Honor. It's an agreement signed by the dead person. Well, where's the underlying agreement between the client? Was it a verbal agreement? The underlying agreement, all of the terms of our law. Now, California law has a requirement that you have a written agreement with your client. And, Your Honor, I don't want to go beyond that. So I'm just curious. Was there ever a written agreement between you and your client? And, Your Honor, again, I don't want to go beyond the written record, but I want to answer your question. There was a written agreement that was sent to the client. We were never able to find the signed copy of it by the client. And so it was never produced, and that's why it's not part of the record on appeal, although we do believe, and it is our firm's practice, to get a signed retainer agreement and accepting representation of a Chapter 11. So the only embodiment of this so-called security retainer is what was set forth in the application. That is correct, Your Honor. And, again, we believe that the application does satisfy the rules of getting a written agreement because in the application, the debtor's president specifically says, we agree to pay this advance against future fees, and all of the terms of the engagement are set forth in the application, and it is signed by the debtor's president. But that's why you don't see a separate retainer agreement as part of this record. The notice also put all of the terms of the engagement out to creditors, and we don't believe this is a situation where the security retainer would be an interest adverse to the debtor because in this context, there's been issues, obviously, the Court's aware of, Fletcher v. Davis and Rule 3-300. We don't believe this would be an issue that is at risk. Does that always embody a security interest in the retainer? I believe that. Are those terms synonymous? I believe so, Your Honor, because the import of having a security retainer. So whenever an attorney gets money from a client as a retainer, it's your position that the fact that you have that money in your account, that you have a – the attorney has a security interest in that money? I believe that's correct. Your Honor, I wouldn't go so far as to say in every circumstance because I can't think of every one off the top of my head, but I would clearly say the majority of circumstances, if client pays attorney funds and says, this is an advance to be used against the services you will render on my behalf, that the attorney has a security interest in those funds and that security interest is perfected by possession because the attorney now has the funds in a separate account. And that's the same type of security interest that would be perfected under the commercial code? I would say so, Your Honor, yes. And that's what Dixie PAC-1, in fact, found was that by having a security retainer if the firm was determined to have it. They also said you have to show some intent. And in this case, there clearly was intent because the debtor's president signed the application saying this was a payment as an advance against fees. Well, the bankruptcy court, when it looked at all of this, concluded that as a finding of fact, I think, that there was no intent. Well, Your Honor, the bankruptcy court at first said before the remand that this was a security retainer and the firm did perfect by having possession of the money. Well, so he changed his mind. She changed her mind after it was vacated and sent back to her. I understand. They can do that. And then on remand, obviously she could, and she did. And on remand, the court then concluded that the firm did not have a security interest in the money because the main reason was lack of the use of the word security retainer because the word advance was used everywhere. But advance against fees is a similar language to what was used in Hathaway Partners and in GoCo Realty and in all these other cases. And that's, in fact, the words used by the United States Trustee's Office and its Guides for Employment of Professionals talking about advance against fees. It's the language that was used in the community and it's the language that was used by the United States Trustee's Office that oversees all of this. So, again, you have a situation where the firm would not have accepted this engagement. Well, to answer that question, do you look to state law or do you look to federal bankruptcy law if there is such a thing? With regard to whether or not there's a lien on the funds, I believe you look to state law. And clearly, I think everywhere in the country, property rights. So the fact that what does the Trustee's Guidelines tell us? The Trustee's Guidelines tells us that in certain circumstances, the U.S. Trustee's Office will permit or will not permit certain things to occur. And if you want to avoid an objection from the U.S. Trustee's Office to say we won't allow this to happen as our watchdog overseeing the bankruptcy process, you better do certain things. And so that guide tells us what you can and cannot do. And with regard to the three types of retainers, the advance retainer, where ownership to the funds transfers to the attorney upon payment, the U.S. Trustee's Guides don't allow for that. And Judge Ryan in the Hathaway Partners case basically concluded you can't have that in a bankruptcy case. Ownership of the funds must remain with the attorney until ultimately the client... Be with the client. Ownership remains with the client, correct, even though the funds are in the attorney's possession. Yes. And that's what we have in this case. The application, the notice, everything said that the firm will hold the money in trust pending ultimate determination by the bankruptcy court of what fees are reasonable and allowable and should be paid. So you have a situation where clearly the ownership of the money remains with the debtor without regard to what words were used or not used in describing that procedure. The bankruptcy court, Judge Fenning, approved the procedure, and not a single creditor nor the United States Trustee objected to the payment or the procedure in this case. Is this a standard practice in bankruptcy? Absolutely. Do the accountants do it too? I don't believe so because generally accountants are not retained prior to the bankruptcy case, but I would suggest... Could they? I mean, could you have a situation... I don't see why not. And it's an agreement to be reached between the parties and, you know, the appellee... So all professional experts that might be involved in a bankruptcy could conceivably undertake this kind of arrangement. I believe that's probably correct, Your Honor. And I think it's universal with regard to debtors' attorneys getting retained prior to filing a large Chapter 11 case to insist upon obtaining a substantial retainer up front or passing on the engagement. And, again, the appellee is a Chapter 7 trustee who's been on the panel for years. You know, he could comment on this, but I don't think you could find a single debtor attorney firm that would enter into a case without receiving a substantial retainer up front. Now, the other part of the bankruptcy court's ruling was that this was inadequate disclosure to the other creditors, other secured creditors. And I want to answer that, too, because it's in the notice, it's in the application, the court approves it. Security interests? The advance against fees, that phrase. Advance against fees is there, but is there a claim for security interest any place? Not...  Not using the word security, Your Honor. But, again, if you look to the California Supreme Court and the Satenko decision, the Ninth Circuit decision, the disclosure is required under the federal law, not under the state law, right? I believe so, Your Honor. And there's no disclosure here. No place did you say, I have a security interest in this, did you? Using those words, Your Honor, no, that's correct. We did not use the word security. But, again, you have... So then the world and, you know, everybody else in the place didn't know about it. Well, Your Honor, I take issue with that because I think everybody did know about it because... And we have special speak in the bankruptcy court? Again, Your Honor, whether you use the word security or use the word advance against future fees to be incurred, it means the same thing. And you have Ninth Circuit and California Supreme Court that say you do not have to use the word lien, you do not have to use the word security. You look to substance over form. You've got Hathaway Partners, you've got Montgomery Drilling, you've got a lot of cases, Pacific Far East by the Ninth Circuit where you say you look to substance over form. And in this case, what does it mean to have an advance against fees? It's where money is paid and you are looking to that money in order to pay your fees. You're putting two questions together. One of them is, do you need magic words to create the security interest? And it may be that you don't have to say security interest in order to create one. But it's a different question when you're not creating it, but rather you're disclosing it to others. And maybe when you're disclosing it to others, you've got to be clear about what it is. And, Your Honor, I've got a few seconds left. I'd like to reserve them, but I'll come back to that on rebuttal if I may. Okay. Well, you're actually 34, now five seconds over, but we'll give you a chance. Oh, that's over. Yeah, the red light came on. We'll give you a chance to respond. Thank you, Your Honor. Sure, of course. Good morning. And please accord, my name is Tim Yu. I am the Chapter 7 trustee in this matter. I believe what we need to keep in mind is that there are two appellate decisions in this case. One, first one went to the BAP, and that's where we discussed the application of Section 726 and GOCO and all these cases. However, the appeal before this panel today is the one from Judge Guilford, District Court. That one was actually a simpler appeal. It was whether or not Judge Ellen Carroll of the Bankruptcy Court followed the remand instructions, very detailed roadmap set forth by the BAP asking Judge Carroll, hey, I need you to do two things. One, would you please find out if there was an adequate disclosure of the appellant's secured interest in the retainer? Two, whether there was adequate evidence in the record to show under state law that the debtor granted appellant a security interest. In both instances, Judge Carroll said, no, it wasn't enough. Specifically, she said, I see nothing here that would indicate that there was ever an interest by the debtor to give a security interest to the appellant. That decision was appealed to Judge Guilford of the District Court, who said the BAP remanded asking Judge Carroll to make fact findings. In fact, he quoted the decision and said the Bankruptcy Court is in a better position to make these and any other necessary factual findings. And Judge Guilford said, okay, I see these factual findings. The Ninth Circuit law is very clear that the standard for review is whether or not a finding of fact is clearly erroneous. And sitting as the appellate court, Judge Guilford said he's not left with a definite and firm conviction that a mistake had been committed, which is the standard. Although the clear error rule on findings of fact is typically applied when there's some dispute as to what the fact is. Here it seems to me there's a dispute as to what the facts mean. The papers are what they are. They say what they say. We're not saying I remember this. It's not a he said, she said. It looks to me like a question of law before which there's de novo. You may win in any event on de novo, but I have to say it doesn't sound like a factual finding in the classic sense of then clear error review. If the Bankruptcy Court said, okay, I read through all the records. There was no intent to create a security interest. I believe that's a factual finding. There was no intent. And that was the one that got appealed and was affirmed. So maybe the pieces of this are that way. Whether there's adequate disclosure looks to me as though that's just a question of what's on paper. Correct. And actually. So depending a little bit on what we're talking about, it may be de novo, it may not be. Right. And if you recall, based on the law and what the roadmap set forth by the BAP says, you just need to find one of them that the Bankruptcy Court was correct in finding its fact. And I think an intent is a fact. And I do have some time, and it is my first chance to argue before this panel. So if I may, there were some other issues brought up. Judge Fries mentioned the security retainer versus security interest. If in every case a security interest is given when you have a security retainer, as the appellant argues, we would not have gone the remand path that we did, because the law is clear. If appellant is correct, there was no need to go back down to the Bankruptcy Court to find out whether there was a security interest created or an intent to create a security interest. Because what appellant is asking this Court to accept is that the case law just says, okay, there are three different kinds of retainers. Two of them are out of hand, because you can't have that in Bankruptcy Court. The third one is an automatic security interest. So obviously we take exception to that, because if the BAP believed that, there would not have been a remand. Appellant also discussed the Fletcher case, that's the rules of professional conduct in California, where if you have an interest adverse to your client, you need to do a couple of things. One, obviously flush it out, and number two, to have a third-party attorney take a look and give their comments to their client. Appellant makes a point that there's no adverse relationship here. When we're talking about adverse, it's not the street lingo adverse. You do not need a fistfight. When you say adverse, you are talking about a bank, for example, with a security interest. Clearly, they want the debtor to succeed, and they want both would succeed. However, they have an adverse interest against the assets of the debtor. The other one is the appellant claims that Judge Carroll changed her mind after the remand. I kind of agree, but not as to the timing. The transcript says what it says. I believe Judge Carroll said, appears to have a security interest. However, if you look at the order that she signed, she specifically crossed out secured. So if there was a change of mind, it was because of that, not because of the remand. And I do need to point out to the panel that if there was an, if the appellant truly believed it had a security interest, it would have never filed a proof of claim saying they had an unsecured claim. And with that... I did not see that. It says, what it says, there are three boxes, I believe, and one of them says secured. The box that was checked was clearly unsecured. Let me ask you this, and you may or may not be sufficiently expert in the experience that you've got to answer it, but we just heard that it's routine practice for any firm representing somebody going into a Chapter 11 pre-petition to get a secured retainer. Is that right? Is that the routine practice? No, Your Honor. We, including me and my firm, we do take a retainer. A substantial retainer to file a Chapter 11 petition. However, we, at least speaking for me and my firm, we don't tell people we have a security interest in the funds. Why not? We don't believe so. Actually, in light of the first BAP decision, actually, my firm started redrafting our retainer agreement to actually put granting language in there and to, you know, hopefully I'll file one soon with this new retainer agreement, but we'd like to test that out. We'd like to put that retainer in there. I'm not sure I understood. After the BAP decision, you decided you will take security retainers or not? Yes. We're going to flush it out to the world. We have a security interest. We want to put granting language in. We're going to put at least two out of the three judges think it's a proper consequence. At least two out of the three say this is a terrible idea. Judge Montali doesn't express whether it's a good or bad idea. He just rules it's a matter of law. But Judge Pappas says, well, I'm with him on the law, but this is really a bad thing. And no bankruptcy judge understanding what's at stake should approve one of these. Yes. In fact, a question could be raised as to the BAP decision, whether there was even a plurality in that decision. However, we have learned from that case. My firm will definitely take steps to put the granting language, as State law requires, and also provide the debtor an opportunity to farm that agreement out for third-party attorney review. And do we have any experience with the bankruptcy judges as to whether they're paying attention to the advice that they shouldn't accept these things? You know, I have never actually seen one that was actually flushed out as a security interest that went through, just because this is a unique situation. And I obviously feel terrible about what's going on. But it was a situation where there's just not enough money. Maybe I didn't do my job well enough, but not enough money came into these states, so clearly no hard feelings here. But it's a sensitive issue, but it is something I think a lot of the practitioners are learning to protect ourselves. Maybe we just flush it out to the world. We have a security interest, and that way if a judge or the U.S. Trustee's office has problems with it, we'll learn up front. Thank you. Response? Yes, thank you. Briefly, the one thing I don't think we really had a chance to talk about was equitable lien. The notice issue, which we were talking about before, really relates to the BAP's decision in DICC-CPEC-1 on whether or not you have a security retainer. And in this case, after BAP decided DICC-CPEC-1, the California Corps of Los Angeles County v. Construction Laborers came out with this equitable lien case that says a mere promise to pay an attorney from a specific fund with detrimental reliance being shown can create an equitable lien without the use of the word lien or granting language or anything else. And that's specifically what we had in this case. My firm, and I believe that the IPLE agreed with this, that no debtor firm accepts a Chapter 11 case without a substantial payment of money. Whether or not they knew it was a security retainer or not, historically, separate issue. No firm accepts an engagement without a substantial retainer coming in, often six figures. So in this case, if the attorneys would pass but for the payment of this large money, and then that gets approved by the attorney, and then that gets approved by the court after application and notice to all creditors, then what you have is detrimental reliance for the attorneys are looking to that specific fund from which they can be paid. And in this case, the Bankruptcy Court found that there was no showing of an equitable lien, and I don't believe that's an issue of fact. And I see why it's not at all. If we agree with you that there's an equitable lien, you still have the problem of disclosure. That is to say, equitable lien is just another way of getting to the point of having security interest. Finding an equitable lien doesn't get you past the separate disclosure requirement, correct? I would disagree, Your Honor, because all of the disclosure and the notice language in Dixie Peg 1 referred to security retainers as opposed to an equitable lien by a court of equity imposing a lien in a specific circumstance or context. And in this case, the equitable lien arises from an agreement between a debtor and the debtor's counsel, and that then gets approved by a court. I mean, bankruptcy is unique in this sense. Does the equitable lien get the same status as a security lien? A lien would be a lien in this context, Your Honor. Does it make any difference whether it's equitable or equitable? That's correct. We would take the position that the secured creditors get paid before other money can be administered by a Chapter 7 trustee. And holding an equitable lien puts you in the same position as a secured creditor? That's the position we would take. Your counsel puts you in a better position because you don't need to notify anybody. Your Honor, again, we've kind of gone rounds. I think we did notice everybody, and we did everything that every other firm was doing at the time. And we would have all liked to have had the benefit of Dixie Peg 1 when we were accepting this engagement years ago. And the last thing I'll just note is that no professional, no creditor ever objected to the trustee's final report with the distribution showing my firm would get a slightly higher percentage than the other professionals that came in to the case without requesting or insisting upon obtaining a retainer post-petition. This was the bankruptcy judge's issue all along, so I don't think there's any prejudice to anybody here. And everybody was okay with the result that was going to happen because that's what the community thought the issue was and what the law was. So on that, we would request that the Court reverse. Thank you. Thank you. Thank you very much, both of you, for helpful arguments. The next case on the calendar has been submitted, Casanova Alcadia v. NAC Real Estate Investments and Assignments. We have two more argument cases.
judges: Fletcher, Paez, Duffy